1
2
3
4
5
6
7
8         **IN THE UNITED STATES DISTRICT COURT**

9         **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    EDITH MANABAT,                                    CASE NO. CV F 10-1018 LJO JLT

12                      Plaintiff,                     **ORDER ON DEFENDANTS CHASE AND**
                                                       **MERS' F.R.Civ.P. 12 MOTION TO DISMISS**
13         vs.                                         (Doc. 8.)

14    SIERRA PACIFIC
      MORTGAGE COMPANY, INC.,
15    et al.,

16                      Defendants.
      _____/
17

18                              **INTRODUCTION**

19         Defendants Chase Home Finance LLC ("Chase") and Mortgage Electronic Registration Systems,

20    Inc. ("MERS") seek to dismiss as meritless and time barred plaintiff Edith Manabat's ("Ms. Manabat's")

21    claims arising from her defaulted home loan.  This Court considered Chase and MERS' F.R.Civ.P.

22    12(b)(6) motion to dismiss on the record and VACATES the August 2, 2010 hearing, pursuant to this

23    Court's sua sponte dismissal of the claims against Chase and MERS.

24                              **BACKGROUND**

25                         **Ms. Manabat's Home Loan**

26         In December 2006, Ms. Manabat obtained a $476,772 adjustable rate loan from defendant Sierra

27    Pacific Mortgage Co., Inc. ("Sierra Pacific") to purchase her Bakersfield property ("property").  Ms.

28

                                        1

1  Manabat took title to the property by way of a grant deed recorded on December 22, 2006.[1]

2  The loan was secured by a Deed of Trust ("DOT") encumbering the property and recorded on

3  December 22, 2006.  The DOT identifies Sierra Pacific as lender, Greenhead Investments, Inc.

4  ("Greenhead") as trustee, and MERS as beneficiary.

5  After Ms. Manabat failed to make loan payments, a Notice of Default and Election to Sell Under

6  Deed of Trust ("NOD") was recorded on February 24, 2009.  The NOD indicated that past due payments

7  plus permitted costs and expenses was $34,168.78.

8  A Substitution of Trustee was recorded on April 3, 2009 by which defendant NDEx West, LLC

9  ("NDEx") substituted as trustee under the DOT in place of Greenhead.  Pursuant to an Assignment of

10  Deed of Trust recorded on April 7, 2009, all beneficial interest under the DOT was assigned to U.S.

11  Bank National Association ("U.S. Bank").

12  A Notice of Trustee's Sale was recorded on July 29, 2009 for the property.

13  **Ms. Manabat's Claims**

14  Ms. Manabat proceeds on her complaint ("complaint") filed March 23, 2010 in Kern County

15  Superior Court prior to Chase and MERS' removal to this Court.  The complaint accuses Chase, MERS

16  and the other defendants of "negligent, fraudulent, and unlawful conduct concerning a residential

17  mortgage purchase loan transactions [sic] with plaintiff."  The complaint alleges 16 claims, 11 of which

18  target Chase and/or MERS and which will be discussed below.  The complaint seeks to recover actual,

19  statutory and punitive damages and to enjoin non-judicial foreclosure of the property.

20  **DISCUSSION**

21  **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

22  Chase and MERS contend that the complaint attempts to avoid Ms. Manabat's loan obligations

23  although it alleges no wrongdoing by Chase or MERS, "relies on boilerplate allegations and fails to state

24  essential elements of the claims" to fail as a matter of law.

25  "A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal

26  may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service,*

27  ────────────

28  [1]     Documents pertaining to Ms. Manabat's loan and default were recorded with the Kern County Official
Records.

2

1   *Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981).  Sua

2   sponte dismissal may be made before process is served on defendants.  *Neitzke v. Williams*, 490 U.S.

3   319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*,

4   745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte

5   prior to service of process on defendants).

6       A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

7   forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

8   of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

9   whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

10  support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

11  *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

12  there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

13  cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

14  *v. Village of Lombard, Ill*., 58 F.3d 295, 297 (7th Cir. 1995).

15      In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

16  most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

17  whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

18  *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

19  true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

20  *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court

21  "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel.*

22  *Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the

23  [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways

24  that have not been alleged." *Associated General Contractors of California, Inc. v. California State*

25  *Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt

26  to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd.*

27  *v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

28      "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine

4

1    whether they plausibly give rise to an entitlement to relief.

2    *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

3        For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the

4    complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).

5    Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d

6    at 1162, n. 2.   In addition, a "court may consider evidence on which the complaint 'necessarily relies'

7    if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3)

8    no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450

9    F.3d 445, 448 (9th Cir. 2006).   A court may treat such a document as "part of the complaint, and thus

10   may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United*

11   *States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).   Such consideration prevents "plaintiffs from

12   surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their

13   claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[2]   A "court may disregard

14   allegations in the complaint if contradicted by facts established by exhibits attached to the complaint."

15   *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning*

16   *v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).   Moreover, "judicial notice may be taken

17   of a fact to show that a complaint does not state a cause of action."   *Sears, Roebuck & Co. v.*

18   *Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los*

19   *Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).   A court properly may take judicial notice of matters of

20   public record outside the pleadings'" and consider them for purposes of the motion to dismiss. *Mir v.*

21   *Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

22       With these standards in mind, this Court turns to Chase and MERS' challenges to Ms. Manabat's

23   claims.

24                              **Truth In Lending Act**

25       The complaint's first claim alleges against MERS a violation of the Truth In Lending Act

26

27   ───────────────
     [2]        "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim
     depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not
     dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document

28   in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

1  ("TILA"), 15 U.S.C. §§ 1601, et seq., and its implementing Regulation Z, 12 C.F.R. §§ 226, et seq., that

2  Ms. Manabat was not provided a notice of cancellation or Consumer Handbook on Adjustable Rate

3  Mortgage to entitle her to rescind the "loan transaction."

4  ### *Residential Mortgage Transaction Exemption*

5  Chase and MERS contend that Ms. Manabat is unable to seek TILA rescission because Ms.

6  Manabat took "a purchase money loan."

7  A "residential mortgage transaction" is exempt from TILA rescission. 15 U.S.C. § 1635(e)(1).

8  A "residential mortgage transaction" is defined as "a transaction in which a mortgage, deed of trust,

9  purchase money security interest arising under an installment sales contract, or equivalent consensual

10  security interest is created or retained against the consumer's dwelling to finance the acquisition or initial

11  construction of such dwelling." 15 U.S.C. § 1602(w); *Turczynski v. Friedman*, 2007 WL 4556923, *

12  4 (E.D. Cal. 2007) ("The transaction for which plaintiff seeks rescission was a 'residential mortgage

13  transaction,' within the meaning of § 1602(w) (security interest sought against plaintiff's dwelling for

14  the purpose of acquiring it), and was therefore expressly exempt from TILA's disclosure and rescission

15  rights . . .")

16  Chase and MERS correctly point to the complaint's allegations that Ms. Manabat obtained a

17  "purchase money loan" to bar her TILA rescission claim. There is no statutory right of rescission "where

18  the loan at issue involves the creation of a first lien to finance the acquisition of a dwelling in which the

19  customer resides or expects to reside." *Betancourt v. Countrywide Home Loan, Inc.*, 344 F.Supp.2d

20  1253, 1261 (D. Colo. 2004); *see Watts v. Decision One Mortgage Co., LLC.*, 2009 WL 648669, *4 (S.D.

21  Cal. 2009) (dismissing with prejudice TILA rescission claim in that "while home equity loans and

22  refinancing transactions would be amenable to rescission, Plaintiff's purchase money mortgage is not");

23  *Karma v. Columbia Home Loans, LLC*, __ F.Supp.2d __, 2009 WL 2230733, *3 (E.D. Pa. 2009) ("Here,

24  it is undisputed that the loan was obtained to finance the acquisition of the plaintiff's dwelling.

25  Rescission therefore is not available for the loan at issue. This claim is dismissed."); *Wellman v. First*

26  *Franklin Home Loan Services*, 2009 WL 243961, *2 (S.D. Cal. 2009) ("'residential mortgage

27  transactions' such as Plaintiff's purchase money mortgage, are expressly excluded from coverage");

28  *Manown v. Cal-Western Reconveyance Corp.*, 2009 WL 2406335, *5 (S.D. Cal. 2009) ("Plaintiffs are

1    not entitled to seek rescission for their purchase money mortgage.")

2    Chase and MERS are correct that "the recorded documents confirm that the Loan was a purchase

3    money loan." Ms. Manabat acquired property title by a grant deed recorded on December 12, 2006, the

4    same date on which the DOT was recorded.  The DOT identifies Ms. Manabat as "borrower."  The

5    complaint alleges that the loan was to purchase Ms. Manabat's property.  The grant deed and DOT

6    demonstrate that they are part of a purchase money transaction in which the DOT permitted Ms. Manabat

7    to acquire the property.  Ms. Manabat's loan transaction is residential mortgage transaction exempt from

8    TILA rescission.  The TILA rescission claim fails as a matter of law.

9                                    ***Rescission Limitations Period***

10   Chase and MERS further contend that a TILA rescission claim is time barred.

11   TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without

12   penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal*

13   *Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986);15 U.S.C. § 1635(a).  TILA rescission may be

14   extended up to three years if the lender fails to comply with TILA disclosure requirements.  *Semar*, 791

15   F.2d at 701-702; 15 U.S.C. § 1635(f).

16   15 U.S.C. § 1635(f) addresses the outer most limit to seek rescission:

17   An obligor's right of rescission **shall expire three years after the date of
     consummation of the transaction** or upon the sale of the property, whichever occurs
18   first, notwithstanding the fact that the information and forms required under this section
     or any other disclosures required under this part have not been delivered to the obligor
19   . . . (Bold added.)

20   The U.S. Supreme Court has described as "manifest" Congress' intent to prohibit rescission after

21   the three-year period has run:

22           Section 1635(f), however, takes us beyond any question whether it limits more
     than the time for bringing a suit, by governing the life of the underlying right as well. The
23   subsection says nothing in terms of bringing an action but instead provides that the "right
     of rescission [under the Act] shall expire" at the end of the time period. It talks not of a
24   suit's commencement but of a right's duration, which it addresses in terms so
     straightforward as to render any limitation on the time for seeking a remedy superfluous.
25   There is no reason, then, even to resort to the canons of construction that we use to
     resolve doubtful cases, such as the rule that the creation of a right in the same statute that
26   provides a limitation is some evidence that the right was meant to be limited, not just the
     remedy. *See Midstate Horticultural Co., supra*, at 360, 64 S.Ct., at 130; *Burnett, supra*,
27   at 427, n. 2, 85 S.Ct., at 1054 n. 2; *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692,
     693-694, 48 L.Ed. 1067 (1904).

28

                                              7

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419, 118 S.Ct. 1408 (1998).

The complaint alleges, and matters subject to judicial notice reflect, that Ms. Manabat's loan was consummated in December 2006 to render her rescission remedy expired prior to March 23, 2010 filing of Ms. Manabat's complaint.  TILA rescission is time barred.

### *Failure To Tender*

Chase and MERS challenge TILA rescission as barred in that Ms. Manabat "fails to satisfy the tender requirement."  Chase and MERS hold Ms. Manabat "to make a tender offer to pay the lender what she received in the original mortgage transaction (minus interest, finance charges, etc)."

The "voiding of a security interest may be judicially conditioned on debtor's tender of amount due under the loan."  *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).

15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded effectively:

> . . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

12 C.F.R. § 226.23(d) address rescission effects and provides:

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, **the consumer shall tender the money or property to the creditor** or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.  (Bold added.)

Neither TILA nor its Regulation Z "'establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract.'" *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)).  The Ninth Circuit Court of Appeals, relying on *Large*, explained:

> Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made the [borrowers] have only advanced a claim seeking rescission."

*Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

A rescission notice is not automatic "without regard to whether the law permits [borrower] to rescind on the grounds asserted."  *See Yamamoto*, 329 F.3d at 1172.  Entertaining rescission automatically "makes no sense . . . when the lender contests the ground upon which the borrower rescinds." *Yamamoto*, 329 F.3d at 1172.  "In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice.  Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any." *Yamamoto*, 329 F.3d at 1172 (italics in original).

Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest and return of the money within twenty days of the notice of rescission, we believe this assumes that the notice of rescission was proper in the first place." *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007).  A "court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations." *Yamamoto*, 329 F.3d at 1173.  The Ninth Circuit has explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may require borrowers to prove ability to repay loan proceeds:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

9

*Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds given the lender's non-egregious TILA violations and equities heavily favoring the lender).[3]

Neither the complaint nor record references Ms. Manabat's notice to rescind or tender of indebtedness.  Chase and MERS correctly contest Ms. Manabat's attempt to rescind.  The complaint does not address conditions precedent to permit rescission.  The complaint is not a timely, valid rescission notice.  The complaint's silence on Ms. Manabat's tender of or ability to tender loan proceeds is construed as her concession of inability to do so.  "Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest." *American Mortgage*, 486 F.3d at 820-821.  Without Ms. Manabat's meaningful tender, TILA rescission is an empty remedy, not capable of being granted.  The absence of a sufficiently alleged notice of rescission and tender of loan proceeds dooms a TILA rescission claim to warrant its dismissal.

### *Damages Limitations Period*

Chase and MERS argue that a TILA damages claim is barred by the one-year limitations period.

A TILA damages claims is subject to 15 U.S.C. § 1640(e), which provides that an action for a TILA violation must proceed "within one year from the date of the occurrence of the violation."  "TILA requires that any claim based on an alleged failure to make material disclosures be brought within one year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d

---

[3]     The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

> Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers.

*Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

1176, 1183 (D. Or. 2005).  The limitations period runs from the date of a transaction's consummation

which is the time that a consumer becomes contractually obligated on a credit transaction.  *Monaco v.*

*Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008).  The Ninth

Circuit noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

> The failure to make the required disclosures occurred, if at all, at the time the loan
> documents were signed.  The [plaintiffs] were in full possession of all information
> relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day
> the loan papers were signed.

Ms. Manabat consummated her loan in December 2006 and filed her complaint on March 23,

2010, more than three years after her loan transaction to render a TILA damages claim time barred.

The complaint lacks a viable TILA claim.

**California Civil Code Sections 2923.5 And 2923.6**

The complaint's second claim alleges that MERS violated California Civil Code section 2923.5

("section 2923.5") in that MERS "failed to make contact with plaintiff thirty (30) days prior to the filing

and service of the Notice of Default to discuss the plaintiff's financial situation and explore options for

the plaintiff to avoid foreclosure and provide a toll-free HUD telephone number."  "As a result," the

claim continues, "MERS failed to declare in the Notice of Default that it had made the required contact

. . ."

Section 2923.5(a)(2) requires a "mortgagee, beneficiary or authorized agent" to "contact the

borrower in person or by telephone in order to assess the borrower's financial situation and explore

options for the borrower to avoid foreclosure."  Section 2923.5(b) requires a default notice to include

a declaration "from the mortgagee, beneficiary, or authorized agent" of compliance with section 2923.5,

including attempt "with due diligence to contact the borrower as required by this section."

The record reveals that the NOD included the necessary declaration to satisfy section 2923.5.

The complaint lacks a cognizable claim that Chase or MERS was required to modify Ms. Manabat's loan

in that section 2923.5 imposes no such mandate.  Section 2923.5 requires only contacts or attempted

contacts to "assess the borrower's financial situation and explore options for the borrower to avoid

foreclosure."  *See* Cal. Civ. Code, § 2923.5(a)(2).  An alleged section 2923.5 claim fails.

The complaint's third claim alleges that MERS violated California Civil Code section 2923.6

1   ("section 2923.6") in that it "failed to offer a modification to the existing principal [sic] to the existing

2   principal on the loan."

3        Chase and MERS note that section 2923.6 "does not mandate that the lender provide the

4   borrower with a loan modification" in that "such action is only encouraged."

5        Section 2923.6(b) notes the California Legislature's intent that a mortgagee "offer the borrower

6   a loan modification or workout plan if such modification or plan is consistent with its contractual or

7   other authority." "[N]othing in Cal. Civ. Code § 2923.6 imposes a duty on servicers of loans to modify

8   the terms of loans or creates a private right of action for borrowers." *Farner v. Countrywide Home*

9   *Loans*, 2009 WL 189025, at *2 (2009). In *Vikco Ins. Services, Inc. v. Ohio Indem. Co.,* 70 Cal.App.4th

10  55, 62-63, 82 Cal.Rptr.2d 442 (1999), the California Court of Appeal explained the absence of a private

11  right of action arising from a statute silent on the issue:

12       Adoption of a regulatory statute does not automatically create a private right to
    sue for damages resulting from violations of the statute. Such a private right of action

13  exists only if the language of the statute or its legislative history clearly indicates the
    Legislature intended to create such a right to sue for damages. If the Legislature intends

14  to create a private cause of action, we generally assume it will do so " 'directly[,] ... in
    clear, understandable, unmistakable terms ....' (Citation.)" ( *Moradi-Shalal v. Fireman's*

15  *Fund Ins. Companies* (1988) 46 Cal.3d 287, 294-295 [250 Cal.Rptr. 116, 758 P.2d 58]
    ( *Moradi-Shalal* ); *see also Crusader Ins. Co. v. Scottsdale Ins. Co.*, *supra*, 54

16  Cal.App.4th at pp. 125-137 (because a judge may not insert what has been omitted from
    a statute, legislative intent alone determines whether a statute creates a new private right

17  to sue); *Schaefer v. Williams* (1993) 15 Cal.App.4th 1243, 1248 [19 Cal.Rptr.2d 212]
    (nothing in Elections Code creates a private cause of action to enforce a pledge to follow

18  fair campaign practices; "Surely, if the Legislature had intended to create such a private
    action, it would have done so by clear and direct language"); *Nowlon v. Koram Ins.*

19  *Center, Inc.* (1991) 1 Cal.App.4th 1437, 1444-1445 [2 Cal.Rptr.2d 683] (absent some
    express provision for civil liability, courts cannot assume a private cause of action for

20  negligence may be brought any time a legislative enactment is violated).)

21       Neither a private right of action nor actionable duty is discernable from section 2923.6 to defeat

22  a claim based on its violation.  Section 2923.6 does not require a lender to enter into a loan modification

23  to serve the parties' best interests.

24       Ms. Manabat lacks actionable claims under sections 2923.5 and 2923.6.

25  **Wrongful Foreclosure – Note Possession**

26       The complaint's fourth claim alleges "wrongful foreclosure" against Chase and MERS in that

27  they lack "possession of the Promissory Note" and "are not 'person[s] entitled to enforce' the security

28  interest on the Property, as that term is defined in Commercial Code § 3301 [('section 3301')]."

1   Chase and MERS explain that Ms. Manabat incorrectly alleges that Chase and MERS must

2   possess the promissory note to initiate foreclosure in that section 3301 "permits non-holders of notes to

3   enforce the provisions of the deeds of trust securing the obligation.  Section 3301 provides: "'Person

4   entitled to enforce' an instrument means (a) the holder of the instrument, (b) **a nonholder in possession**

5   **of the instrument who has the rights of a holder** . . ."  (Bold added.)

6   Chase and MERS further correctly note that under California law, a lender may pursue non-

7   judicial foreclosure upon default with a deed of trust with a power of sale clause.  "Financing or

8   refinancing of real property is generally accomplished in California through a deed of trust. The

9   borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the

10  property to the lender (beneficiary) as security for repayment of the loan." *Bartold v. Glendale Federal*

11  *Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).  A deed of trust "entitles the lender to reach

12  some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226,

13  1235, 44 Cal.Rptr.2d 352 (1995).

14  If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender

15  may non-judicially foreclose.  *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237,

16  286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the

17  applicable California Civil Code sections:

18  The comprehensive statutory framework established to govern nonjudicial
    foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating
19  to notice and right to cure. It would be inconsistent with the comprehensive and
    exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another
20  unrelated cure provision into statutory nonjudicial foreclosure proceedings.

21  *Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins.*

22  *Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of

23  the power of sale contained in a deed of trust.")

24  Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of

25  their authorized agents" may conduct the foreclosure process.  Under California Civil Code section

26  2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent

27  for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed

28  substitution of trustee, or an agent of that substituted trustee."  "Upon default by the trustor, the

13

1 beneficiary may declare a default and proceed with a nonjudicial foreclosure sale."  *Moeller*, 25

2 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

3       A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where

4 there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale

5 contained in a mortgage or deed of trust."  *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323

6 (1970).

7       "Under Civil Code section 2924, no party needs to physically possess the promissory note."

8 *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, §

9 2924(a)(1)).  Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and

10 election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.  An "allegation that

11 the trustee did not have the original note or had not received it is insufficient to render the foreclosure

12 proceeding invalid."  *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

13       In the case at hand, the DOT includes of power of sale to permit MERS as DOT beneficiary and

14 Chase as loan servicer to commence non-judicial foreclosure.  Ms. Manabat's challenge to produce an

15 original note is unsupported.  The complaint alleges no facts of failure to comply with the statutory

16 scheme for non-judicial foreclosure.  A purported unlawful foreclosure claim fails as a matter of law,

17 especially in the absence of allegations of misconduct in the foreclosure proceedings.

18                   **Wrongful Foreclosure – Loan Modification**

19       The complaint's fifth claim alleges that Chase and MERS "failed to suspend the foreclosure

20 action to allow plaintiff to be considered for alternative foreclosure prevention options."

21       Chase and MERS construe the claim as premised on their "purported failure to provide Plaintiff

22 with a loan modification in violation of the Home Affordable Modification Program ('HAMP')."  Chase

23 and MERS explain that HAMP is part of the Troubled Assets Relief Program ("TARP") which was

24 enacted as a subchapter of the Emergency Economic Stabilization Act ("EESA"), 12 U.S.C. §§ 5201,

25 et seq.  TARP directs the Treasury Department and other federal agencies to modify loans which they

26 own or control and expands the "HOPE for Homeowners" program by altering eligibility and increasing

27 the ability of the Department of Housing and Urban Development to help families keep their homes.

28 12 U.S.C. §§ 5211-5212, 5219-5220.

1    Treasury Department guidelines require TARP recipients to suspend foreclosures and consider

2    alternative prevention options.  With TARP, Congress provided a private right of action for those

3    directly harmed by the actions of the Secretary of the Treasury Department.  *See* 12 U.S.C. § 5229(a).

4    However, courts limit the private right of action to claims against the Secretary of the Treasury

5    Department.  "12 U.S.C. § 5229(b)(1) shows Congress' intent to limit private action under TARP solely

6    to actions against the Secretary as provided in § 5229, and not extend any obligations or liabilities to

7    those receiving TARP funds. Thus, the Court finds that there is no implied private right to sue fund

8    recipients under TARP."  *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1185 (N.D.

9    Cal. 2009).  Chase and MERS correctly conclude that by omission of reference to claims against other

10   than the Treasury Secretary, "Congress did not intend to create a private right of action for violation of

11   HAMP against lenders that received HAMP funds."  The complaint's fifth claim fails in the absence of

12   an underlying private right of action.

13   **Rosenthal Fair Debt Collection Practices Act**

14   The complaint's eleventh claim alleges that Chase and MERS are "debt collectors under

15   California's Rosenthal Fair Debt Collections Act, Civil Code § 1788.2(c)" and acted "unfairly and

16   unlawfully" to collect a debt from Ms. Manabat by pursuing non-judicial foreclosure.

17   Chase and MERS fault the claim's failure to allege that they are debt collectors under the

18   Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code, §§ 1788, et seq.  Chase and

19   MERS further take issue with the claim's failure "to allege what acts Defendants took in violation of the

20   RFDCPA or any fact which would support these allegations."

21   The RFDCPA's purpose is "to prohibit debt collectors from engaging in unfair or deceptive

22   practices in the collection of consumer debts and to require debtors to act fairly in entering into and

23   honoring such debts."  Cal. Civ. Code, § 1788.1(b).  The RFDCPA defines "debt collector" as "any

24   person who, in the ordinary course of business, regularly, on behalf of himself or herself or others,

25   engages in debt collection."  Cal. Civ. Code, § 1788.2(c).  "[F]oreclosure does not constitute debt

26   collection under the RFDCPA."  *Izenberg v. ETS Services, LLC*, 589 F.Supp.2d 1193, 1199 (C.D. Cal.

27   2008).  The "law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection

28   within the meaning of the RFDCPA or the FDCA [Fair Debt Collection Practices Act, 15 U.S.C. §§

1   1692, et seq.].'" *Gamboa v. Trustee Corps*, 2009 WL 656285, * 4 (N.D. Cal. 2009). As this Court has

2   explained previously, "[l]ogic suggests that non-judicial foreclosure is not a debt collector's act under

3   California Civil Code section 1788.2(c)." *Swanson v. ECM Mortgage Corp.*, 2009 WL 3627925 (E.D.

4   Cal. 2009).

5        The RFDCPA claim is barred in that complaint points to only non-judicial foreclosure, which

6   as discussed above is proper pursuant to the DOT's power of sale provision. Moreover, the claim is

7   doomed with failure to allege applicable RFDCPA violations or violated RFDCPA sections. The

8   complaint's reference to California Civil Code section 1788.13(i) is unavailing given the propriety of

9   non-judicial foreclosure and the lack of Chase or MERS' debt collector status under RFDCPA. The

10  RFDCPA claim is subject to dismissal.

11                                    **Unconscionability**

12       The complaint's twelfth unconscionability claim alleges that Chase and MERS "prepared the pre-

13  printed form documents that plaintiff was required to sign as a condition plaintiff's [sic] 'take it or leave

14  it' manner with no opportunity for plaintiff to negotiate the mortgage interest or payment terms" and

15  "defendants . . . used their superior bargaining power to convince plaintiff that he [sic] could not obtain

16  more favorable mortgage terms from any other lender."

17       Chase and MERS contend that California Civil Code section 1670.5 ("section 1670.5")

18  unconscionability is not an actionable claim but rather "a defense to contract formation."

19       Section 1670.5(a) provides:

20           If the court as a matter of law finds the contract or any clause of the contract to
             have been unconscionable at the time it was made the court may refuse to enforce the
21           contract, or it may enforce the remainder of the contract without the unconscionable
             clause, or it may so limit the application of any unconscionable clause as to avoid any
22           unconscionable result.

23       Unconscionability has "procedural" and "substantive" elements. *A & M Produce Co. v. FMC

24  Corp.*, 135 Cal.App.3d 473, 486, 186 Cal.Rptr. 114 (1982). The procedural element focuses on: (1)

25  "oppression," which "arises from an inequality of bargaining power which results in no real negotiation

26  and 'an absence of meaningful choice'"; and (2) "surprise" which "involves the extent to which the

27  supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party

28  seeking to enforce the disputed terms." *A & M Produce*, 135 Cal.App.3d at 486, 186 Cal.Rptr. 114

1  (citations omitted).  The substantive element turns on "allocation of risks between the parties, and

2  therefore that a contractual term is substantively suspect if it reallocates the risks of the bargain in an

3  objectively unreasonable or unexpected manner" to constitute a "one-sided" result without "justification"

4  for it.  *A & M Produce*, 135 Cal.App.3d at 487, 186 Cal.Rptr. 114 (citations omitted).

5       Chase and MERS point to the complaint's absence of facts that they engaged in "oppression,

6  surprise, or overly-harsh conduct in connection with the originating of the Loan."  Chase and MERS

7  further note their lack of involvement in loan origination given that "Sierra Pacific was the lender and

8  contracting party."

9       Chase and MERS are correct that they are not subject to an unconscionability claim to warrant

10  dismissal of the claim against them.

11  **Civil Conspiracy**

12       The complaint's thirteenth claim alleges that Chase, MERS and other defendants "were acting

13  in concert with each other and ratified and approved the above-described fraudulent conduct by the other

14  defendants" and committed "acts pursuant to an agreement by and between each of the other of these

15  defendants to defraud plaintiff into entering the subject loan agreements."

16       Chase and MERS fault the absence of allegations that they "knew that a tort was planned or

17  concurred in the tortious scheme with knowledge of its unlawful purpose" and of facts "as to the

18  formation and operation of the alleged conspiracy."

19       "[C]ivil conspiracy is not an independent tort."  *Kidron v. Movie Acquisition Corp.*, 40

20  Cal.App.4th 1571, 1581, 47 Cal.Rptr.2d 752 (1995).  "Conspiracy is not a cause of action, but a legal

21  doctrine that imposes liability on persons who, although not actually committing a tort themselves, share

22  with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp.*

23  *v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-511, 28 Cal.Rptr.2d 475 (1994) (citing *Wyatt v. Union*

24  *Mortgage Co.,* 24 Cal.3d 773, 784,157 Cal.Rptr. 392, 598 P.2d 45 (1979)).  "Standing alone, a

25  conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an

26  actual tort." *Applied Equipment*, 7 Cal.4th at 511, 28 Cal.Rptr.2d 475.  "The essence of the claim is that

27  it is merely a mechanism for imposing vicarious liability; it is not itself a substantive basis for liability."

28  *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal.App.4th 802, 823, 32 Cal.Rptr.3d

1   325 (2005).

2       The civil conspiracy elements are: "(1) the formation and operation of the conspiracy, (2)

3   wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct."

4   *Kidron*, 40 Cal.App.4th at 1582, 47 Cal.Rptr.2d 752. "The conspiring defendants must also have actual

5   knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful

6   purpose." *Kidron*, 40 Cal.App.4th at 1581, 47 Cal.Rptr.2d 752; *see Wyatt v. Union Mortgage Co.,* 24

7   Cal.3d 773, 784-786, 157 Cal.Rptr. 392 (1979) ("a plaintiff is entitled to damages from those defendants

8   who concurred in the tortious scheme with knowledge of its unlawful purpose"); *People v. Austin*, 23

9   Cal.App.4th 1596, 1607, 28 Cal.Rptr.2d 885 (1994) ("without knowledge of the illegal purpose there

10  is no basis for inferring an agreement"). "The effect of charging . . . conspiratorial conduct is to

11  implicate all . . . who agree to the plan to commit the wrong as well as those who actually carry it out."

12  *Black v. Sullivan,* 48 Cal.App.3d 557, 566, 122 Cal.Rptr. 119 (1975).

13      The conspiracy claim fails in the absence of facts to support necessary elements. Of key

14  importance, the complaint lacks allegations of facts of wrongful conduct attributable to Chase and

15  MERS directly or through their concurrence in a tortious scheme with knowledge of its unlawful

16  purpose. The complaint fails to allege facts of Chase and MERS' agreement between themselves or with

17  others to plan to commit wrongs along with actual commission of an actionable tort. As such, the

18  conspiracy claim is subject to dismissal.

19                          **Unfair Competition Law**

20      The complaint's fourteenth claim accuses Chase and MERS of "unlawful business and/or

21  practices within the meaning of California Business and Professions Code §§ 17200, et seq. ['Unfair

22  Competition Law' ('UCL')]."

23                              ***Standing***

24      Chase and MERS argue that Ms. Manabat lacks standing to purse a UCL claim in absence of

25  cognizable injury or damage.

26      California Business and Professions Code section 17204 limits standing to bring a UCL claim

27  to specified public officials and a private person "who has suffered injury in fact and has lost money or

28  property as a result of the unfair competition."

Business and Professions Code section 17203 addresses UCL relief and provides in pertinent part:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any **money or property**, real or personal, which may have been acquired by means of such unfair competition.  (Bold added.)

"In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's remedies are 'generally limited to injunctive relief and restitution.'" *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).

Quality correctly notes the complaint's absence of facts of Ms. Manabat's money or property allegedly lost due to a UCL violation.  The UCL claim offers an insufficient, bare allegation that unlawful business practices have "damaged plaintiff's creditworthiness."  The complaint lacks sufficient allegations of Ms. Manabat's standing to warrant dismissal of the UCL claim.

### Unfair, Fraudulent Or Deceptive Business Practices

Chase and MERS further challenge the claim's failure to allege anything constituting an "unlawful" business practice.

"Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr. 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200).  The UCL establishes three varieties of unfair competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group, Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000).  An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale,* 25 Cal.3d 626, 631-632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979)).  "A business practice is 'unlawful' if it is 'forbidden by law.'" *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002) (quoting *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832,

838, 33 Cal.Rptr.2d 548 (1999).  The UCL "thus creates an independent action when a business practice violates some other law."  *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79.  According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL.  *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992).

A fellow district court has explained the borrowing of a violation of law other than the UCL:

> To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

*Rubio v. Capital One Bank (USA), N.A.*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008).

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cal-Tech Communications*, 20 Cal.4th 163 at187, 83 Cal.Rptr.2d 548.

The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest,"  *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,* 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be deceived."  *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673, at *5 (N.D. Cal. 2005).

"A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation."  *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

The complaint is insufficient to establish that Chase or MERS engaged in unfair business practices under the UCL.  In the absence of violation of a borrowed law, a UCL claim fails in that it cannot rest on alleged irregularities in the loan transaction or aborted foreclosure proceedings.  The

complaint lacks claims under the federal and state statutes addressed above.  The complaint points to no predicate violation of law.  The complaint lacks reasonable particularity of facts to support a UCL claim.  The complaint's bare reference to federal and state statutes and common law claims provides not the slightest inference that Ms. Manabat has a viable UCL claim.  The UCL claim lacks particularity of fraudulent circumstances, such as a misrepresentation, for a UCL claim.  The complaint lacks allegations of ongoing wrongful business conduct or a pattern of such conduct.  The complaint lacks facts to hint at a wrong subject to the UCL to warrant the UCL claim's dismissal against Chase and MERS.

### Injunctive Relief

The complaint's fifteenth claim seeks to enjoin MERS "from conducting a foreclosure sale during the pendency of this action."

Chase and MERS explain that the complaint's injunctive relief claim fails in the absence of a viable claim to support it.

"Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention." *Karlsen*, 15 Cal.App.3d at 117, 92 Cal.Rptr. 851.  "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942).  Neither a viable claim nor "an independent duty" supports injunctive relief to doom the injunctive relief claim.

### Quiet Title

The complaint's sixteenth claims "seeks to quiet title against the claim of defendant MERS and all other persons or parties that may claim against the Property."

Chase and MERS fault the quiet title claim as "procedurally deficient" and lacking necessary elements.

California Code of Civil Procedure section 760.010 provides for an action "to establish title against adverse claims to real or personal property or any interest therein."  California Code of Civil Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

1.    A legal description and street address of the subject real property;

2.      The title of plaintiff as to which determination is sought and the basis of the title;

3.      The adverse claims to the title of the plaintiff against which a determination is sought;

4.      The date as of which the determination is sought; and

5.      A prayer for the determination of the title of the plaintiff against the adverse claims.

Chase and MERS correctly note that the complaint is unverified and fails to establish "adverse claims" to Ms. Manabat's title.  Neither Chase nor MERS holds a claim adverse to Ms. Manabat's title in that a deed of trust "carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in payment of his debt." *Lupertino v. Carbahal*, 35 Cal.App.3d 742, 748, 111 Cal.Rptr. 112 (1973).  The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or proceeding provided by law for establishing or quieting title to property."  Cal. Code Civ. Proc., § 760.030.  MERS, as DOT beneficiary, and Chase, as loan servicer, lack an interest in the property subject to a quiet title claim.  Chase and MERS correctly note that a quiet title claim is premature given that a foreclosure sale has not occurred.

Moreover, a quiet title claim is doomed in the absence Ms. Manabat's tender of her debt.  "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."  *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").  With the complaint's absence of a meaningful ability or willingness to tender Ms. Manabat's indebtedness, her quiet title claim fails.

### Accounting

The complaint's seventeenth claim alleges that the "amount of money still owed any defendant or any other beneficiary claimant is unknown to plaintiff and cannot be determined without an accounting."

Chase and MERS contend that an accounting is unwarranted in the absence of a fiduciary relationship with Ms. Manabat.

An accounting cause of action is equitable and may be sought where the accounts are so

1   complicated that an ordinary legal action demanding a fixed sum is impracticable.  *Civic Western Corp.*

2   *v. Zila Industries, Inc.,* 66 Cal.App.3d 1, 14, 135 Cal.Rptr. 915 (1977).  A suit for an accounting will not

3   lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law.

4   *Civic Western,* 66 Cal.App.3d at 14, 135 Cal.Rptr. 915.  An accounting will not be accorded with respect

5   to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain.  *Civic Western,*

6   66 Cal.App.3d at 14, 135 Cal.Rptr. 915.

7         "A right to an accounting is derivative; it must be based on other claims."  *Janis v. California*

8   *State Lottery Com.*, 68 Cal.App.4th 824, 833-834, 80 Cal.Rptr.2d 549 (1998).  Moreover, as an equitable

9   matter, an accounting frequently "presents a fiduciary relation between the parties in the nature of a trust

10   which brings it especially within equitable remedies."  *Kritzer v. Lancaster*, 96 Cal.App.2d 1, 6, 214

11   P.2d 407 (1950).

12         The complaint lacks allegations of complexity or a fiduciary relationship to warrant an

13   accounting to plaintiffs.  "A debt is not a trust and there is not a fiduciary relation between debtor and

14   creditor as such."  *Downey v. Humphreys,* 102 Cal.App.2d 323, 332, 227 Cal.Rptr. 484 (1951).  "The

15   same principle should apply with even greater clarity to the relationship between a bank and its loan

16   customers."  *Price v. Wells Fargo Bank*, 213 Cal.App.3d 465, 476, 261 Cal.Rptr. 735 (1989).  Moreover,

17   the complaint does not allege that Chase and MERS owe Ms. Manabat money to invoke an accounting.

18   Ms. Manabat lacks a derivative basis for an accounting given the failure of her claims.  The complaint

19   fails to invoke this Court's equity powers to provide Ms. Manabat accounting relief to warrant dismissal

20   of the accounting claim.

21

22                                       **Attempt At Amendment And Malice**

23         Ms. Manabat's claims are insufficiently pled and barred as a matter of law.  Ms. Manabat is

24   unable to cure her claims by allegation of other facts and thus is not granted an attempt to amend.

25         Moreover, this Court surmises that Ms. Manabat has brought this action in absence of good faith

26   and that Ms. Manabat exploits the court system solely for delay or to vex defendants.  The test for

27   maliciousness is a subjective one and requires the court to "determine the . . . good faith of the

28   applicant."  *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795

F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action against Chase and MERS.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.     DISMISSES with prejudice this action against Chase and MERS;

2.     DIRECTS the clerk to enter judgment against plaintiff Edith Manabat and in favor of defendants Chase Home Finance LLC and Mortgage Electronic Registration Systems, Inc. in that there is no just reason to delay to enter such judgment given that Ms. Manabat's claims against Chase and MERS and their alleged liability are clear and distinct from claims against and liability of other defendants.  *See* F.R.Civ.P. 54(b); and

3.     ORDERS Ms. Manabat's counsel, no later than July 1, 2010, to file papers to show cause why this Court should not dismiss this action against defendants Sierra Pacific Mortgage Company, Inc., McMillan Tuscany, LLC, NDEx West, LLC and Priority Posting and Publication.

**This Court ADMONISHES Ms. Manabat and her counsel that this Court will dismiss this action against defendants Sierra Pacific Mortgage Company, Inc., McMillan Tuscany, LLC, NDEx West, LLC and Priority Posting and Publication if Ms. Manabat's counsel fails to comply with this order and fails to file timely papers to show cause why this Court should not dismiss this action against defendants Sierra Pacific Mortgage Company, Inc., McMillan Tuscany, LLC, NDEx West, LLC and Priority Posting and Publication.**

IT IS SO ORDERED.

**Dated:    June 24, 2010**          _____/s/ Lawrence J. O'Neill_____
                                      UNITED STATES DISTRICT JUDGE